IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

CASE NO.

ANDREA GUERRERO,

                Plaintiff,

v.

ALLY FINANCIAL INC.,

                Defendant.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**INTRODUCTION**

1.  These claims are based on federal statutes, namely, Title VII of the Civil Rights Act of 1964 ("Title VII") as amended, 42 U.S.C. § 2000e et seq., the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k), Title I of the Americans with Disabilities Act of 1990 ("ADA") as amended by the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12101 et seq., and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and present a case in which a loyal and dedicated employee, while suffering from a high-risk pregnancy and developing serious medical conditions including partial hearing loss and a seizure disorder, was denied reasonable accommodations, subjected to a failed interactive process, retaliated against for requesting accommodations, and then wrongfully terminated under the pretext of "attendance issues"—all while she was pregnant, disabled, and attempting to exercise her rights under federal law. Despite Ms. Guerrero's exemplary work performance prior to her

1

medical complications and Defendant's initial assurances of support during her medical crisis, Defendant abandoned her when she needed accommodation most, terminating her employment on February 14, 2023, shortly after she requested an ADA accommodation to work from home and applied for FMLA leave. Additionally, Defendant failed to pay Ms. Guerrero wages she was lawfully owed during and after her periods of approved medical leave, in violation of the FLSA. As such, Ms. Guerrero brings this action against Defendant to recover for her losses, pain, and suffering.

## JURISDICTION AND VENUE

2.   This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, as these claims arise under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), and the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.

3.   This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims are so related to the federal claims that they form part of the same case or controversy and arise from a common nucleus of operative facts.

4.   Venue is proper in this district under 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Western District of North Carolina, where Plaintiff was employed by Defendant and where the unlawful employment practices complained of herein took place.

## PARTIES

2

5. Plaintiff Andrea Guerrero is a citizen and resident of Kannapolis, North Carolina, residing at 3120 Bellwood Place, Kannapolis, NC 28081. Ms. Guerrero was employed by Defendant Ally Financial Inc. as a Senior Analyst - BL Risk Fraud from January 31, 2022, until her termination on February 14, 2023.

6. At all relevant times, Plaintiff was an "employee" of Defendant within the definition of the ADA, 42 U.S.C. § 12101, et seq. (specifically, 42 U.S.C. § 12111(4)).

7. At all relevant times, Plaintiff was an "employee" of Defendant within the meaning of Title VII, 42 U.S.C. § 2000e(f).

8. At all relevant times, Plaintiff was an "employee" of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e).

9. Defendant Ally Financial Inc. has its principal place of business located at 500 Woodward Avenue, Detroit, Michigan 48226, and maintains significant operations at 601 S. Tryon Street, Charlotte, North Carolina 28202. Defendant Ally Financial Inc. conducts business in North Carolina and throughout the United States.

10. At all relevant times, Defendant was an "employer" within the definition of the ADA, 42 U.S.C. § 12101, et seq. (specifically, 42 U.S.C. § 12111(5)) on the basis that it employs more than 15 employees.

11. Defendant Ally Financial Inc. is a person within the meaning of 42 U.S.C. § 2000e(a), and an employer within the meaning of 42 U.S.C. § 2000e(b), employing more than 15 employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

12. At all relevant times, Defendant was an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d), and is an "enterprise engaged in commerce or in the production

3

of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A), with annual gross volume of sales or business done in excess of $500,000.

13. At all times relevant to this action, Defendant possessed and exercised the power and authority to direct, control and supervise the work performed by Ms. Guerrero.

## ADMINISTRATIVE EXHAUSTION

14. Plaintiff filed a timely Charge of Discrimination against Defendant with the United States Equal Employment Opportunity Commission ("EEOC") on or around July 25, 2023, bearing Charge Number 430-2023-03377.

15. The Charge alleged discrimination based on sex, pregnancy, disability, and retaliation.

16. The EEOC investigated the matter.

17. On July 29, 2025, the EEOC concluded its investigation and issued a Dismissal and Notice of Right to Sue to Plaintiff.

18. Plaintiff has filed this Complaint within 90 days of receiving the Notice of Right to Sue.

19. All conditions precedent to filing this action have been satisfied.

## GENERAL ALLEGATIONS

20. On or around January 31, 2022, Ally Financial, Inc. hired Ms. Guerrero as a Senior Analyst - BL Risk Fraud. Ms. Guerrero performed well and Ally had no issues with her performance until her medical and pregnancy issues began to arise.

21. Ms. Guerrero was scheduled to work Monday through Friday from 8:00 AM to 5:00 PM in a hybrid role with three days in the office and two days working remotely. The position required Ms. Guerrero to work in a call center environment.

4

22.    Prior to her medical issues, Ms. Guerrero never had any issues with her work performance. Her immediate supervisor, Jason Shaw, allowed Ms. Guerrero and her coworkers to work flexible hours as long as their work was completed. Mr. Shaw allowed employees to clock in after 8:00 AM or clock out before 5:00 PM so long as work was getting done.

23.    On or around August 30, 2022, Ms. Guerrero began experiencing ear pain and itching, along with hearing loss. Ms. Guerrero informed her immediate supervisor, Jason Shaw, of the health issues.

24.    The following day, on August 31, 2022, Ms. Guerrero had a doctor's appointment to examine her ear. Her doctor did not find any immediate problems and encouraged her to wait and see if it improved.

25.    On or around September 30, 2022, Ms. Guerrero attended an appointment with her OBGYN and learned she was pregnant.

26.    Several days later, in early October 2022, Ms. Guerrero visited urgent care due to leakage in her ear and an increase in pain. Urgent care prescribed antibiotics and advised her to get a second opinion from an ear specialist. Ms. Guerrero informed Mr. Shaw of her pregnancy and plans to visit another ear doctor the same day.

27.    On or around October 26, 2022, Ms. Guerrero's ear specialist confirmed that she had partial hearing loss. He recommended she get a CAT scan. He suspected that Ms. Guerrero may have a benign tumor applying pressure on her ear.

28.    Since Ms. Guerrero's condition made it difficult to work in a call center environment, Ms. Guerrero applied for short term disability through Ally's third-party leave administrator, Unum.

29.    On or around October 31, 2022, Ms. Guerrero's radiologist recommended she wait until after her pregnancy to receive the CAT scan due to radiation concerns.

30.    Unum reviewed and approved Ms. Guerrero's first short-term disability leave from October 26, 2022, through November 9, 2022.

31.    On or around November 9, 2022, Ms. Guerrero returned to her doctor for a follow-up appointment. He said she could get a CAT scan after 20 weeks of pregnancy, or wait until the birth of her child, and cleared her to return to work on or around November 10, 2022.

32.    Ms. Guerrero returned to work on or around November 10, 2022.

33.    However, on or around November 16, 2022, Ms. Guerrero suffered a seizure while getting ready for work. Ms. Guerrero informed Mr. Shaw that morning: "I see my text didn't go through yesterday. I didn't log back in after break because I wasn't feeling good and I am not going to work today. Idky I feel so much stress and anxiety along with my other medical issues. IDK what to do anymore."

34.    The following day, on November 17, 2022, Ms. Guerrero checked into the emergency room to be evaluated after the seizure. She texted Mr. Shaw: "Sorry I didnt text you. I had a seizure the last day we text and it was starting to happen again yesterday so I was in the ER."

35.    Ms. Guerrero then informed her primary care doctor and OBGYN, who both recommended more time off of work. Following their recommendation, Ms. Guerrero initiated a second claim with Unum and kept Mr. Shaw and Human Resources Business Partner Brittney Lowery updated.

6

36.   Mr. Shaw responded supportively, stating: "I am so sorry to hear that, hope you got the care you needed. Keep the lines of communication open with me and HR. We want to support you."

37.   Unum approved Ms. Guerrero's second short-term disability leave starting November 17, 2022.

38.   On or around November 19, 2022, Ms. Guerrero's father passed away unexpectedly. Ms. Guerrero made Mr. Shaw aware of the situation immediately and informed him she would need to travel to the Dominican Republic to help her mother transition back to the United States. Mr. Shaw approved this, and on or around November 21, 2022, Ms. Guerrero made the trip. She returned on or around December 3, 2022.

39.   Ally provided Ms. Guerrero with paid bereavement leave from November 21 through November 23, 2022.

40.   Upon her return, Ms. Guerrero visited a doctor because her pregnancy was designated as high risk. Her doctor scheduled her appointment for several weeks out.

41.   On or around December 16, 2022, Ms. Guerrero attended follow-up appointments with her OBGYN and Neurologist, who cleared her to return to work on or around January 27, 2023.

42.   Unum extended Ms. Guerrero's short-term disability leave and approved it through January 2, 2023, and then from January 4, 2023, through January 26, 2023.

43.   Throughout this period, Ms. Guerrero experienced significant difficulties with the administration of her disability claims. Ms. Guerrero spoke to her representative at Unum in or around early January 2023, who told her they had placed her with her

7

original Unum representative because the employee on her case had been terminated. The Unum representative told Ms. Guerrero this because they wanted her to be aware they "had missed important deadlines," and that it was all their fault, and she should not be to blame.

44. Ms. Guerrero also experienced problems with medical forms being sent to the wrong doctor's offices and passed back and forth between providers. Despite these administrative difficulties, Unum ultimately approved all of Ms. Guerrero's short-term disability leave.

45. Prior to her scheduled return to work, on or around January 13, 2023, Ms. Guerrero requested an ADA accommodation to work from home five days per week, as recommended by her doctors. Ms. Guerrero texted Ms. Lowery: "I have a concern because Jason recently told me last week Ally Lending expects me to be in the office 3 times a week. I have a lot of health issues going on right now and don't feel good enough to go in the office."

46. Ms. Guerrero also informed Ms. Lowery that there had been exceptions where a Lending employee was allowed to work from home every day because he moved further away from Charlotte with his parents to save up to buy a home. Ms. Guerrero stated: "I think I should be granted same exception considering what I am still going through."

47. On January 17, 2023, Ms. Lowery responded outlining the ADA accommodation process and the medical certifications needed. Ms. Lowery directed Ms. Guerrero to contact HRpolicy@ally.com and request a medical accommodation for remote work.

48. On or around January 31, 2023, Ms. Guerrero returned the completed ADA accommodation medical certification to Employee Relations.

8

49.   Despite submitting the completed medical certification, Ms. Guerrero never received any response back from anyone at the Company regarding her accommodation request. There was no conversation with Ms. Lowery about the accommodations or what they would possibly look like. The only conversation that was had was where Ms. Lowery told Ms. Guerrero to email the Company about the accommodations.

50.   Ally completely failed to engage in any substantive interactive process or provide any decision on Ms. Guerrero's accommodation request before terminating her employment.

51.   On or around January 27, 2023, Ms. Guerrero began working from home following her approved short-term disability leave. She was still experiencing immense pain, and informed Ms. Lowery and her Unum representative that she needed to see her doctor again.

52.   During this period, Ms. Guerrero continued to experience severe physical limitations. On February 1, 2023, when asked to join a required team meeting, Ms. Guerrero informed Mr. Shaw: "No whenever I sit for more than 30 minutes straight I get a lot of pain. I am laying down. Please dont say that in the meeting, let them know I am not joining."

53.   On or around February 6, 2023, Ms. Guerrero complained to Ms. Lowery about her job role moving in a different direction than what had been discussed during her interview process.

54.   On or around February 8, 2023, Ms. Guerrero attended another OBGYN appointment. There, she explained that she had still been experiencing massive pain

9

when she walked. Her doctor informed her she would not need to re-certify her paperwork for short-term leave.

55.    Ms. Guerrero then reached out to her Unum representative and sent her all of her medical records and discussed taking FMLA leave and asked if Unum could input the claim. Ms. Guerrero informed Ms. Lowery of this as well.

56.    Ms. Guerrero texted Ms. Lowery: "I'm not returning to work because I cant bare the pain while sitting working on the monitors all day. Theres no guarantee they will approve fmla with just medical records. I understand you have to address my unapproved absences."

57.    Ms. Guerrero later texted Ms. Lowery requesting a severance package, stating she could not voluntarily resign unless offered severance because she had to survive and would need to be terminated to apply for unemployment.

58.    The Company was fully aware of Ms. Guerrero's disability, her pregnancy, her request for reasonable accommodations, and that her absences were approved and largely related to her disability and need for accommodations.

59.    Approximately a week later, on or around February 14, 2023, Ms. Lowery called Ms. Guerrero and informed her that the Company had terminated her employment. Ms. Lowery said Ms. Guerrero was fired for not returning from leave.

60.    Ms. Guerrero was shocked. She still had unused paid time off and had just applied for FMLA leave, for which she had just become eligible.

61.    At the time of her termination, Ms. Guerrero's ADA accommodation request remained pending with no substantive response from Ally. Ally had never informed Ms. Guerrero that her accommodation request was denied, nor had Ally engaged in any

meaningful interactive process to determine what reasonable accommodations could be provided.

62.    Other, non-pregnant, non-disabled employees were permitted to work fully remotely. A Lending employee was allowed to work from home every day to save money to buy a home, and this arrangement was announced during a team meeting. This demonstrates that Ally treated Ms. Guerrero differently because of her pregnancy and disability.

63.    In addition to failing to accommodate Ms. Guerrero and terminating her employment, Ally also failed to pay Ms. Guerrero wages she was lawfully owed. From December 2, 2022, through her termination on February 14, 2023, Ms. Guerrero experienced ongoing payroll issues and was not properly compensated for time worked.

64.    Ms. Guerrero repeatedly contacted Human Resources and payroll regarding these wage issues. On January 26, 2023, Ms. Guerrero texted Ms. Lowery: "I still haven't gotten paid for the time out."

65.    Ms. Guerrero reported that she received a check for "all the pto which they need to reverse" and that she called payroll and left a message but had not received a response.

66.    Ms. Guerrero worked on January 26 and 27, 2023, but was not paid for this work. She texted that payroll "originally paid her but then took the paycheck back."

67.    Throughout her employment, Ms. Guerrero was required to work her scheduled hours and was not provided proper overtime compensation when she worked in excess of 40 hours per week.

11

68. Because of Defendant's actions, Ms. Guerrero has been severely damaged. Ms. Guerrero has suffered significant financial losses, including lost wages, lost benefits, and unpaid compensation for work performed.

69. Ms. Guerrero also suffers from severe emotional distress and mental anguish. The termination occurred during one of the most vulnerable times in her life—while she was pregnant with a high-risk pregnancy, suffering from partial hearing loss and a seizure disorder, and grieving the recent loss of her father.

70. Ms. Guerrero's pregnancy was high-risk and required ongoing medical care and monitoring. The stress of losing her job and her health insurance during this critical time placed both Ms. Guerrero and her unborn child at risk.

71. Ms. Guerrero looks at her situation and struggles daily with the fact that she was abandoned by her employer at the time she needed support most. She copes with the knowledge that despite doing everything right—notifying her employer of her medical conditions, following all leave procedures, submitting accommodation requests, and maintaining communication with Human Resources—she was still terminated.

72. Ms. Guerrero's life has been fundamentally altered. She lost her income at a time when she had significant medical expenses and was preparing for the birth of her child. She lost her health insurance coverage when she needed it most. She lost her professional reputation and career trajectory.

73. The emotional toll of this experience has been devastating. Ms. Guerrero suffers from anxiety and depression related to her termination. She experiences feelings of betrayal, humiliation, and worthlessness as a result of how she was treated by Ally.

74. Ms. Guerrero's family has also suffered as a result of Defendant's actions. The loss of income and health insurance created significant financial strain on her household during an already difficult time.

75. The combination of losing her father, suffering serious medical complications, carrying a high-risk pregnancy, and then being terminated from her job has caused Ms. Guerrero severe and lasting psychological harm.

76. Ms. Guerrero continues to suffer from the physical effects of her medical conditions, which were exacerbated by the stress of her wrongful termination and the lack of proper medical care due to loss of insurance coverage.

## COUNT I - VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT (ADA)

### Disability Discrimination (42 U.S.C. § 12112(a))

77. Plaintiff incorporates by reference the above-stated previous allegations of this Complaint.

78. At all relevant times, Plaintiff was a qualified individual with an actual or perceived disability. Specifically, Ms. Guerrero suffered from partial hearing loss, a suspected benign tumor in her ear, a seizure disorder, and severe complications from her high-risk pregnancy that substantially limited major life activities including hearing, walking, sitting, and performing manual tasks.

79. Prior to Plaintiff's request for an accommodation pertaining to her disability, Plaintiff was performing her job at a level that met and exceeded her employer's legitimate expectations. Defendant had no issues with Ms. Guerrero's performance until her medical and pregnancy issues began to arise.

13

80. Plaintiff notified Defendant of her disabilities. Ms. Guerrero informed her supervisor Jason Shaw and Human Resources Business Partner Brittney Lowery of her partial hearing loss, ear pain, seizures, severe pain when sitting for more than 30 minutes, and high-risk pregnancy complications. Plaintiff provided medical documentation to Defendant through Unum and Employee Relations to account for her workplace restrictions and physical limitations.

81. Defendant was aware of Plaintiff's disability. Defendant knew Ms. Guerrero had partial hearing loss that made it difficult to work in a call center environment, that she experienced severe pain when sitting for extended periods, that she had suffered seizures requiring emergency room treatment, and that her pregnancy was high-risk with ongoing complications requiring specialized medical care.

82. Defendant terminated Plaintiff's employment on February 14, 2023, because of her actual or perceived disabilities. The timing of Ms. Guerrero's termination—shortly after she submitted her completed ADA accommodation request and applied for FMLA leave, and while she was experiencing significant disability-related limitations—demonstrates that her termination was motivated by her disabilities.

## Failure to Accommodate (42 U.S.C. § 12112(b)(5)(A))

83. Plaintiff requested a reasonable accommodation. On January 13, 2023, Ms. Guerrero requested an ADA accommodation to work from home five days per week as recommended by her doctors. On January 31, 2023, Ms. Guerrero submitted completed ADA accommodation medical certification forms to Employee Relations.

14

84. Defendant violated the ADA by failing to attempt to reasonably accommodate Plaintiff in violation of 42 U.S.C. § 12112(b)(5)(A), even though such accommodation would not impose an undue hardship on Defendant.

85. Defendant could have easily accommodated Plaintiff. Other employees, including a Lending employee who was allowed to work fully remotely to save money to buy a home, were permitted to work from home. Defendant had the capability to allow Ms. Guerrero to work remotely, as evidenced by the fact that she had been working remotely during portions of her employment and that other employees were granted full-time remote work arrangements.

86. The requested accommodation was reasonable and medically necessary. Ms. Guerrero's partial hearing loss made it difficult to work in a call center environment, and her severe pain when sitting for more than 30 minutes made it impossible for her to perform her duties in the office setting. Working from home would have allowed Ms. Guerrero to continue performing her job duties while managing her medical limitations.

87. Defendant further violated the ADA by failing to engage in the interactive process in good faith in violation of 29 C.F.R. § 1630.2(o)(3) or at all. Despite Ms. Guerrero submitting completed medical certification forms on January 31, 2023, Defendant never responded to her accommodation request, never had any substantive conversation about what accommodations could be provided, and terminated her employment while her request remained pending. Defendant never informed Ms. Guerrero that her accommodation request was denied, nor did Defendant engage in any meaningful interactive process to determine what reasonable accommodations could be provided.

15

## Retaliation (42 U.S.C. § 12203)

88.    Plaintiff engaged in protected activity by requesting a reasonable accommodation to work from home on January 13, 2023, and by submitting completed medical certification forms on January 31, 2023.

89.    Defendant further violated the ADA by retaliating against Plaintiff for requesting and engaging in protected activity in violation of 42 U.S.C. § 12203.

90.    Defendant terminated Plaintiff's employment on February 14, 2023, shortly after she requested the ADA accommodation and submitted her completed medical certification. The close temporal proximity between Ms. Guerrero's protected activity and her termination demonstrates that Defendant retaliated against her for exercising her rights under the ADA.

## Damages

91.    Plaintiff has been damaged by Defendant's violations of the ADA as Plaintiff has suffered loss of past wages and benefits, loss of future wages and benefits, loss of professional opportunities, emotional distress, and mental pain and anguish.

92.    Plaintiff is entitled to her attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 12205.

93.    Plaintiff is further entitled to any and all relief permitted under the ADA, 42 U.S.C. § 12117(a), including equitable relief and reinstatement.

## COUNT II

## VIOLATIONS OF TITLE VII (SEX AND PREGNANCY DISCRIMINATION & RETALIATION)

### Sex and Pregnancy Discrimination (42 U.S.C. § 2000e-2(a))

16

94. Plaintiff incorporates by reference the above-stated previous allegations of this Complaint.

95. Based upon the allegations as contained within this Count of this Complaint, Defendant discriminated against Plaintiff based on her sex and pregnancy and illegally impacted the terms and conditions of her employment.

96. Plaintiff is a member of a protected class as a female and as a pregnant woman.

97. Plaintiff was qualified for her position and was performing her job satisfactorily. Prior to her medical and pregnancy issues, Defendant had no issues with Ms. Guerrero's performance.

98. Plaintiff suffered adverse employment actions, including the denial of her accommodation request and the termination of her employment on February 14, 2023.

99. The close timing between Defendant learning of Ms. Guerrero's high-risk pregnancy complications and the adverse actions demonstrates discriminatory animus. Ms. Guerrero informed her supervisor of her pregnancy on or around September 30, 2022. Shortly thereafter, she began experiencing attendance scrutiny that had not existed previously, despite Mr. Shaw's prior practice of allowing flexible work hours.

100. A non-pregnant employee was granted a similar remote work accommodation. Specifically, a Lending employee was allowed to work from home every day to save money to buy a home, and this arrangement was announced during a team meeting. This demonstrates that Defendant treated Ms. Guerrero differently because of her pregnancy.

101. Defendant's stated reasons for terminating Ms. Guerrero—attendance issues and failure to return from leave—were pretextual. Ms. Guerrero's absences were approved by

Unum as short-term disability leave. Defendant's characterization of approved medical leave as "unapproved absences" demonstrates pretext for pregnancy discrimination.

102. Defendant's discriminatory conduct was intentional and was part of a pattern and practice of discriminatory treatment toward pregnant employees.

## Retaliation (42 U.S.C. § 2000e-3(a))

103. Plaintiff engaged in protected activity under Title VII by requesting leave and accommodations related to her pregnancy-related medical conditions. Ms. Guerrero requested short-term disability leave for complications from her high-risk pregnancy and requested an ADA accommodation to work from home due to her pregnancy-related limitations.

104. Defendant retaliated against Plaintiff for this protected activity by terminating her employment on February 14, 2023, shortly after she submitted her completed ADA accommodation request and applied for FMLA leave.

105. The close temporal proximity between Ms. Guerrero's protected activity and her termination demonstrates that Defendant retaliated against her for exercising her rights under Title VII.

## Damages

106. As the direct and proximate result of Defendant's violations of Title VII, Plaintiff has suffered substantial damages including, without limitation, actual and consequential damages for economic loss including lost wages and benefits in amounts that will be proven at trial.

107. As the direct and proximate result of Defendant's violations of Title VII, Plaintiff has also suffered substantial non-economic damages including, without limitation,

emotional and physical suffering and distress, humiliation, and intangible injury from the deprivations of civil rights.

108. Defendant's actions were intentional and done with malice or with reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages.

109. Plaintiff is entitled to her attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 2000e-5(k).

## COUNT III

## VIOLATION OF THE FAIR LABOR STANDARDS ACT (FLSA)

110. Plaintiff incorporates by reference the above-stated previous allegations of this Complaint.

111. At all relevant times, Defendant was an "enterprise engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A), with annual gross volume of sales or business done in excess of $500,000.

112. At all relevant times, Plaintiff was an "employee" of Defendant within the meaning of 29 U.S.C. § 203(e).

113. Plaintiff performed work for Defendant for which she was not compensated in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.

114. Specifically, from on or around December 2, 2022, through her termination on February 14, 2023, Ms. Guerrero was not properly paid for work she performed. Ms. Guerrero repeatedly contacted Human Resources and payroll regarding these wage issues but did not receive proper payment.

19

115. On January 26, 2023, Ms. Guerrero texted Ms. Lowery: "I still haven't gotten paid for the time out."

116. Ms. Guerrero reported that she received a check for "all the pto which they need to reverse" and that she called payroll and left a message but had not received a response.

117. Ms. Guerrero worked on January 26 and 27, 2023, but was not paid for this work. She texted that payroll "originally paid her but then took the paycheck back."

118. Defendant's failure to pay Ms. Guerrero for all hours worked constitutes a violation of the FLSA's wage payment requirements under 29 U.S.C. § 206 and § 207.

119. Defendant's violation was willful, which extends the statute of limitations to three years pursuant to 29 U.S.C. § 255(a) and supports a claim for liquidated damages.

120. As a result of Defendant's violations of the FLSA, Ms. Guerrero has suffered damages in the form of unpaid wages.

121. Pursuant to 29 U.S.C. § 216(b), Plaintiff is entitled to recover her unpaid wages, an equal amount in liquidated damages, and her reasonable attorneys' fees and costs.

## COUNT IV - VIOLATIONS OF NORTH CAROLINA LAW
## Wrongful Discharge in Violation of Public Policy

122. Plaintiff incorporates by reference the above-stated previous allegations of this Complaint.

123. North Carolina has a clear public policy against discrimination on the basis of sex, pregnancy, and disability, as articulated in the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2.

124. Defendant terminated Plaintiff's employment on February 14, 2023, in violation of this public policy. Specifically, Ms. Guerrero was fired because of her disabilities, including her partial hearing loss, seizure disorder, and complications from her high-risk pregnancy, and/or because of her pregnancy.

125. Defendant's termination of Ms. Guerrero while she was pregnant, disabled, and attempting to exercise her rights to reasonable accommodations under federal and state law violated North Carolina's strong public policy against such discrimination.

### Violation of the North Carolina Persons with Disabilities Protection Act

126. Plaintiff was a "qualified person with a disability" under the North Carolina Persons with Disabilities Protection Act, N.C. Gen. Stat. § 168A-1 et seq.

127. Defendant failed to provide a reasonable accommodation to Plaintiff. Despite Ms. Guerrero's request for an ADA accommodation to work from home and her submission of completed medical certification forms on January 31, 2023, Defendant never responded to her accommodation request and terminated her employment while her request remained pending.

128. Defendant terminated Plaintiff because of her disability in violation of the North Carolina Persons with Disabilities Protection Act.

### Damages

129. As a result of these violations of North Carolina law, Plaintiff is entitled to all damages available, including compensatory and punitive damages.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for judgment against Defendant and requests the following relief:

A. A declaratory judgment that Defendant's actions violated Plaintiff's rights under the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, the Pregnancy Discrimination Act, the Fair Labor Standards Act, and North Carolina law;

B. An award of back pay, including lost wages and benefits, with pre-judgment and post-judgment interest;

C. An award of front pay in lieu of reinstatement;

D. An award of compensatory damages for emotional pain, suffering, and mental anguish;

E. An award of punitive damages for Defendant's malicious and reckless conduct;

F. An award of liquidated damages under the Fair Labor Standards Act;

G. An award of reasonable attorneys' fees and costs, as provided by the Americans with Disabilities Act, Title VII, and the Fair Labor Standards Act;

H. An award of costs, including, but not limited to, discretionary costs;

I. Any other and further relief this Court deems just and proper; and

J. Any other and further relief to which Plaintiff may be entitled.

With respect to Plaintiff's claims for punitive damages, Plaintiff requests judgment against Defendant for:

A. Punitive damages sufficient to punish Defendant and deter others from like misconduct;
B. Costs of suit; and
C. Such other relief available under law and deemed just and proper.

# JURY TRIAL DEMANDED

Plaintiff demands trial by jury in open court on all Counts.

Respectfully submitted, this 27th day of October, 2025.

PLAINTIFF

ANDREA GUERRERO


By her Attorney:


/s/ Sharika M. Robinson
SHARIKA M. ROBINSON
North Carolina Bar No. 44750
THE LAW OFFICES OF SHARIKA M. ROBINSON,
PLLC
10230 Berkeley Place Drive, Suite 220
Charlotte, NC 28262
Telephone: (704) 561-6771
Telefax: (704) 561-6773
Email: srobinson@sharikamrobinsonlaw.com
*Counsel for Plaintiff*